## Illinois Central Railroad Company v. Trustees of Schools, etc.

1. INJURY TO REAL PROPERTY—*when right of action for, exists.* Where from the construction and operation of a railroad there is a direct physical injury to real property and a direct physical interference with the free and uninterrupted use thereof from smoke which enters thereupon, which injury is different in kind from that suffered by the public generally, a right of action exists, and where such right of action so exists, it is proper, in connection with the proof thereof, to show all other elements of damage, such as noise naturally arising from the operation of such road.

2. MEASURE OF DAMAGES—*in action for injury to real property arising from the construction and operation of a railrodd.* In such case the plaintiff has the right to have submitted to the jury the question as to whether the premises in question have a special value for a particular purpose, and if they have, the jury may allow special damages on account thereof.

MYERS, J., dissenting.

Action on the case to recover damages for injuries alleged to have arisen to a school building by the construction and operation of a railroad. Appeal from the Circuit Court of Jackson County; the Hon. OLIVER A. HARKER, Judge, presiding. Heard in this court at the August term, 1903. Affirmed. Opinion filed March 10, 1904.

Sidney F. Andrews and W. W. Barr, for appellant; J. M. Dickinson, of counsel.

James H. Martin, for appellee.

Mr. Justice Higbee delivered the opinion of the court.

This was an action in case, brought by appellee, as trustees of schools of township No. 9 south, range No. 2, west of the third principal meridian, in Jackson County, Illinois, for the use of school district No. 2 in said township, against appellant, to recover damages for injuries to a school building and the surrounding grounds, alleged to have been caused by the construction and operation of the railroad of appellant in close proximity thereto.

The declaration charges that appellant in constructing its railroad built a high fill or dump immediately south of said premises; that west of said point there is a sharp curve and beyond a heavy grade; that in passing said point, the locomotive engines of appellant employ great force of steam and " emit, discharge and throw out and stir up great volumes of smoke, cinders, ashes and dust and cast and throw the same daily over, upon and into said premises; that numerous trains pass said premises daily and by reason of their great weight and momentum and the rapidity of their speed, cause loud and ominous noises and make the ground to tremble, vibrate and shake, thus causing the school in said premises to be disturbed and frequently suspended; " that by reason thereof the value of said premises has been greatly depreciated, etc.

A plea of the general issue was filed and there was a verdict in favor of appellees for $2,500. A remittitur of $700 was entered and judgment given for $1,800.

The proofs showed that the school house in question was located upon a lot of ground some two acres in extent; that some three or four years prior to the commencement of this suit, appellant constructed a single track railroad, running east and west, about 200 feet south of the school house lot; that appellant's right of way was adjoining the school house lot; that the ground sloped south from the school

house lot, and the railroad at that point was built on an embankment sixteen to eighteen feet high, the track being raised about on a level with the lower floor of the school house; that in front of the school house property, the grade of the railroad ascended toward the west at the rate of forty-six feet to the mile, and near the southwest corner of said premises, there was a sharp curve; that on account of the grade and the curve, appellant's heavy trains from, the east, required a great deal of power when opposite the school house to move them, and sometimes the engines stalled ·at that place; that there were from six to twelve trains each day during school hours; that when the winds were from the south, smoke from the engines was blown onto the premises and entered the school building, compelling the windows to be closed on the side next to the railroad; that some of the trains made so much noise, recitations had to be suspended while they were passing, and the children were diverted from their studies.

Counsel for appellant states in his brief that this case presents a clean-cut proposition whether, under that clause of the constitution of this state which provides that property shall not be taken or damaged for public use without just compensation, an owner of abutting property is entitled to recovery for the inconvenience and annoyance caused him by the incidental and necessary noise made in the operation of a railroad, there being no interference either with the land or any right growing out of or connected with the land; that the only damages shown were such as resulted from the noise caused by passing trains, necessarily incident to the operation of appellant's railroad; that the injury caused to appellees' premises by the noise, was of the same kind as that suffered by the general public, differing therefrom only in degree, and that consequently no action would lie therefor. These statements are based upon the theory that there was no evidence of any physical injury to the premises, by smoke and cinders, as charged in the declaration, but that the sole injury was the disturbance of the school and annoyance caused to pupils and

teachers by the noise of the passing trains. The theory of appellant, however, is not borne out by the proofs in the case, as the record contains evidence showing that appellees' premises were frequently invaded by the smoke.

In the case of Chicago, Milwaukee & St. Paul Ry. Co. v. Drake, 148 Ill. 226, where evidence was introduced tending to show that when the wind was in the proper direction, smoke, ashes and cinders, to a considerable amount, were blown from the railway onto appellee's premises, and that the value of the premises was depreciated from that cause, as well as from the noises produced by the engines and cars on the railway, and also by reason of the unsightly nature of the railway structure, it was held by the court, that an instruction offered by appellant, that appellee could not recover any damages to her property alleged to have been caused by reason of any noise, confusion or disturbance, occasioned by the operation of appellant's trains in the yards or upon the track of appellant, was properly refused, the court saying : " It cannot be doubted that at common law, mere noise in the immediate vicinity of the premises, and especially of the dwelling-house of a landowner, may be of such character as to constitute an actionable nuisance, remediable by an action on the case for damages or by injunction. * * * If the noise, confusion and disturbance caused by the defendants' engines and cars are such as would, in the absence of legislative authority, have constituted an actionable nuisance, the existence of such authority in no way relieves them of their damaging effect, so as to take away from property owners their right to redress, or so as to convert what was before actionable into a case of *damnum absque injuria.*"

In the case of C., P. & St. L. Ry. Co. v. Leah, 152 Ill. 249, it was said: "It is next contended that it was error in the trial court to admit evidence in regard to noise made by appellant's trains in passing and re-passing appellee's premises, and to permit witnesses to testify as to what effect the 'passing and re-passing of appellant's trains would have upon appellee's property, taking everything into consideration.'

Appellant argues this claim on the theory that damages can be recovered only on account of a direct physical injury to the corpus or subject of property. This is a misapprehension of the law. It was material and proper that appellee should be permitted to prove the special disadvantages and annoyances which interfered with the full enjoyment by him of that use and benefit of his property to which the law entitles him."

The opinion in the case of Calumet & Chicago Canal and Dock Co. v. Morawetz, 195 Ill. 398, approved the doctrine laid down in the quotation last above given, and sustained instructions which told the jury, if from the evidence they should find defendant guilty, then in estimating the damages, they might consider the noise occasioned by the moving of trains and smoke, soot and cinders, if the jury should find from the evidence that smoke, soot and cinders damaged the plaintiff's premises; that as a matter of law, if they should believe from the evidence that the plaintiff had sustained damage by reason of the acts of the defendant complained of, then the measure of damages was the deterioration in value of the plaintiff's premises, resulting from the acts of the defendant; that although the noise made by passing trains was a necessary incident to the proper operation of the railway, yet in so far as such noise would have a tendency to render plaintiff's premises less valuable in the market, it was an element of damage, which the jury might properly take into consideration, provided they believed from the evidence that the plaintiff's premises were damaged by the noise of passing trains complained of in the declaration. In that case the evidence tended to show that appellee's ingress to and egress from her premises were interfered with by the construction of the railroad and that the engines threw smoke and cinders into the house.

The case before us differs from Aldrich v. Met. West Side El. Ry. Co., 195 Ill. 456, for the reason that the trains referred to in that case, were run by electricity and consequently did not throw out any smoke, and it was held by

the court that there had been no direct physical disturbance of any right, public or private, which appellant enjoyed in connection with her property and which gave it an additional value, whereby she had sustained a special damage in excess of that sustained by the public generally. Indeed that case itself recognizes the fact that cinders, ashes and smoke thrown and blown on premises located next to a railroad's right of way cause a direct physical injury to the property or to a right which the owner has therein. In the case at bar there was a direct physical injury to the premises and a direct physical interference with the free and uninterrupted use of them, from the smoke which came into the school rooms, different in kind from that suffered by the public generally. The physical injury to the premises and appellees' use thereof, having been established, it was right and proper that all other elements of damage alleged in the declaration, including noise, naturally arising from the operation of the railroad, should be submitted to the jury to be considered by them in estimating the damage.

Appellant further contends that even if a right of action existed in this case, the court adopted an erroneous measure of damages; that the true measure of damage is the difference in the market value of the property for any and all purposes before and after the construction and operation of appellant's railroad. The court gave an instruction at the request of appellant, embodying the latter's theory of the damages as above set forth, but also instructed the jury on behalf of appellees, that if they found from the evidence, the property in question possessed a special value for school purposes, and the construction and operation of appellant's railroad depreciated its value for such purpose, they had a right to and should consider such special damages for school purposes in fixing the amount of the damages they should find appellee entitled to.

In the case of Dupuis v. C. & N. W. Ry. Co., 115 Ill. 97, it is said by the Supreme Court, " If the lands were devoted to some particular use, and in consequence of such use had an intrinsic value, the owner, in such a case, in

order to get just compensation, would be entitled to recover whatever the lands were worth for the use or purpose to which they might be devoted."

In the case of Cahill v. The Village of Norwood Park, 149 Ill. 156, it is held to be the well-settled law of the state, that the owner of property sought to be condemned for public use, is entitled by way of compensation, to the highest market value of the same for any purpose to which it is adapted or may be used, and that if the land is devoted by the owner to a particular use, and for that use has a special value, he is entitled to receive what it is worth for that purpose. But it is contended by appellant that there was no evidence to show that the premises in question had any special value or advantage for school purposes. The evidence shows that a two-story school house was built upon the premises in 1867 and that it has been used for school purposes ever since; that about eight years prior to the commencement of the suit, two two-story brick wings were added to the building. The fact that the building upon the premises was equipped and had been used for years for school purposes, fully authorized the action of the court in submitting to the jury the question as to whether, under the circumstances, the premises possessed special value for such purposes.

At the conclusion of plaintiff's evidence, appellant moved to strike out all testimony in relation to the damages, given by certain witnesses on part of appellees, on the ground that they had included in their testimony, certain elements of damage for which there could be no recovery, and were unable to separate and state the amounts they had allowed for such elements. An examination of the record shows that most of the witnesses based their estimates of damages upon proper elements, and as the motion was to strike from the record the entire evidence of all of said witnesses, on the question of the amount of damages, it was properly overruled.

The judgment of the court below is affirmed.

*Affirmed.*

Mr. Justice Myers, dissenting.